(38 South. 11.)

No. 15,307.

NEREAUX et al. v. NEREAUX.

(Jan. 30, 1905.)

DONATIONS—INTER VIVOS—EVIDENCE.

Plaintiffs, as forced heirs of their father, seek to have decreed a donation in disguise a transfer made by him to one of his sons of certain shares of stock which he held in a building association, together with his contingent right, as owner of the same, to have conveyed to him certain real estate of which the legal title stood in the name of the association. The case turns upon questions of fact. The transfer complained of was not a donation, but an onerous contract, of character such as would not entitle plaintiffs to a share in the profits therefrom— still less, to a joint ownership in the property.

(Syllabus by the Court.)

Appeal from Nineteenth Judicial District Court, Parish of Iberia; T. Don Foster, Judge.

Action by L. A. Nereaux and others against Edward Nereaux. Judgment for defendant, and plaintiffs appeal. Affirmed.

John Robert Davis, for appellants. Weeks & Weeks, for appellee.

Statement of the Case.

NICHOLLS, J. The plaintiffs and the defendant are sons and daughters of Ursin Nereaux, who died in the said parish on the 1st of August, 1899.

On the 4th day of March, 1892, Ursin Nereaux was a shareholder in the Iberia Building Association, holding four shares of its stock in series E, on which at that date the sum of $226.75 had been paid; the other and future installments upon the same being then unpaid.

In the interval between his subscription to the stock of the association and the 4th day of March, 1892, Ursin Nereaux, wishing to purchase a small tract of land from Mrs. F. Badeaux, availed himself of his right as a shareholder to borrow that sum, payable with interest thereon, from the association.

Instead of lending him the amount, so that he could himself purchase the property, the association itself on the 7th of January, 1889, bought it, taking the title thereto in its own name, but recognizing that it was bought for the use and benefit conditionally of Ursin Nereaux; agreeing to transfer the title to him upon the payment by him of the amount borrowed, with interest, on the liquidation of the series E, and the settlement thereof in the terms and conditions agreed upon.

This being the situation on the 4th day of March, 1892, Ursin Nereaux on that day, by notarial act, transferred to his son Edward Nereaux, with the consent of the association, his said four shares of stock, and also all his rights under the contract which he had made with the association in respect to its purchase of the property from Mrs. Badeaux, and the ultimate conveyance of the same to him, for and in consideration of the price of $226.75, and the assumption by his son of all his (Ursin Nereaux's) obligations as a shareholder in the association; including among them the payment of the amount which he had borrowed, with interest.

On the 18th of July, 1896, the New Iberia Building Association by notarial act transferred the property to Edward Nereaux for $800. The act recited that this sum was paid as follows, to wit:

"The vendee is the holder and owner by virtue of the sale to him by Ursin Nereaux of four shares in Series 'E,' of the stock of said Association, which stock has now matured and is worth the sum of eight hundred and eight dollars and ninety-six cents, and which sum is accordingly due to said Edward Nereaux by said Association, and whereas said Association in purchasing said property contracted and agreed with the original borrower Ursin Nereaux that when said stock should so mature, it would sell to him the said property and accept in payment thereof the amount due on said stock. Now, therefore, in compliance with said agreement, said Association sells and transfers to said Edward Nereaux, vendee, all as above recited, and accepts said sum in payment of the purchase price of same; that is to say, eight hundred dollars of said amount, and pays Edward Nereaux the balance cash, and it is mutually agreed and understood between the parties to

this act that this agreement and sale is made of all rights and obligations between them arising from said stock in Series 'E,' and from said purchase of property, and further in full settlement and liquidation of any and all indebtedness and obligations on the part of said Association because of said stock and property and because of said loan and matters thereto appertaining and belonging."

The plaintiffs bring this action as forced heirs of their father. In their petition, after referring to the transactions hereinbefore set out, they alleged: That on the 4th of March, 1892, their father passed an act purporting and pretending to be a sale of the said property, with all the buildings and improvements thereon, to his son Edward Nereaux, including four shares of stock in the said building association, which was then pledged with the property to the association, and for the sum of $226.75; the said four shares of stock, paid-up value, being worth $800; the act of sale wherein this pretended transfer was made stating that said sum of money was paid to the association by the pretended purchaser Edward Nereaux, and not to the pretended vendor. That the amount paid the said association in said pretended sale was an amount less than one-fifth the value of the property, which was worth at least $2,050. That the said pretended sale was really a donation in disguise, whereby their father attempted to transfer all of his property to one child, in order that his said son Edward Nereaux might acquire all the property, in disregard of the rights of the petitioners, who are his forced heirs, and to make a donation in disguise of all his property. That their father reserved a right of usufruct to one-half of the entire property, and the buildings occupied by himself and family on the said property; said usufruct to last during the lifetime of their father. That in the said act or pretended act of sale, which was really a donation, the said Edward Nereaux bound and obligated himself not to sell, mortgage, assign, or alienate any part or portion of the said property during the lifetime of their said father, Ursin Nereaux, all of which shows more completely that said pretended sale was a donation in disguise; giving all of their father's property to one son, Edward Nereaux, in disregard of the legal rights of petitioners, and all contrary to law.

That this said property was all of the property owned by their father at the time of said pretended sale, which was really a donation in disguise, of all of their father's property. They showed that during the lifetime of their said father, and even after said pretended sale, petitioners aided in the support of their said father, who was very old at the time, being —— years of age, and unable to support himself by labor or other means. They show that up to the time of his death petitioners worked for and aided faithfully in the support of their father. That under the law they are entitled—each and every one of petitioners—to recover a one-tenth interest in the said property as forced heirs of their said father. Petitioners also show that the said Edward Nereaux has been in the possession, use and control of the said property since the death of their said father, and that the rent of said property is worth at least $10 per month, and that petitioners are entitled to recover of the said Edward Nereaux a one-tenth interest each in said amount from the date of the death of their father, who died on the 1st day of August, 1899, and that said amount of rent at the rate of $10 per month from that date to the time of the institution of this suit amounts to the gross sum of $370.

The prayer of the petition was:

"That petitioners be recognized as children and forced heirs of their deceased father, Ursin Nereaux. That said pretended sale be decreed null and void, and a donation in disguise of all of the property which their said father owned, and that said pretended sale be declared null and void and of no effect, and that each and every one petitioner's one-tenth therein be recognized and decreed to exist in and to said property, and that they do have judgment against and recover of said Edward Nereaux the sum of ten dollars per month for the rent of said property since the death of their father,

on the 1st day of August, 1899. That said amount for which they pray judgment be. recognized and decreed to be the gross sum of three hundred and seventy dollars. And they pray that Edward Nereaux be duly cited to answer here to all according to law, and for all other necessary orders, and for general relief, and for costs of this suit."

Defendant, after pleading the general issue, averred: That about the 4th of April, 1888, his father, Ursin Nereaux, now deceased, took four shares in series E of the Iberia Building Association, all under the terms of subscription and payments stipulated by the charter and by-laws of said association. That shortly thereafter the said association acquired from Mrs. Tuhlia Badeaux the property described in the petition, and granted his said father certain rights thereon—among them, the right to acquire said property upon said stock held by him reaching the maturity value of $200 per share, which shares were to be matured by payments of weekly installments thereon, as well as interest on the amount advanced therein as the purchase price of said property and premium therein, together with the dividends and accumulations which said stock might be entitled to. That at the time of said purchase his said father had not paid over $10 on said four shares of stock, and that he was without means to pay the expense of the transfer, and applied to respondent for same. That it immediately transpired that defendant's said father was unable to meet the payments necessary to acquire said property and to prevent the forfeiture of his said right, as well as the said stock which was pledged for the payment of said amount, and that he requested defendant to let him transfer said stock to him, together with his rights of acquisition of all other rights in said property, stating that his other sons professed their inability so to do. That respondent consented to do so, and that respondent immediately consented to make all payments of dues, interest, taxes, and insurance on said stock and property necessary

to acquire same, and that, from the date of the purchase of the said property of the said association from Mrs. Badeaux, respondent made all of said payments from his own funds. That, in expectation of the transfer to be made to him, respondent erected improvements from time to time on said property, all at his own expense and out of his own funds, and that on the 4th day of March, 1892, in accordance with the agreement and understanding already had, and in consideration of the payments thus made by respondent as above recited, and of the further consideration that his said father, Ursin Nereaux, now deceased, should have and enjoy the usufruct of one-half of the property, and of the dwelling house and the premises which had stood thereon at the date of said sale to said association, and in consideration further of respondent assuming to pay all further dues and interest and charges due said association by said Ursin Nereaux, and to refund to it any and all amounts which the said Ursin Nereaux might owe, the said Ursin Nereaux transferred to respondent in full property the property described and sued for in plaintiff's petition, as well as his rights of acquisition and all other rights thereon, and the said four shares of stock in series E, subject, however, to the pledge thereof which had been made to said association.

He shows that he complied with the said agreements, made all of said payments, and did all things necessary under the contract between the said Ursin Nereaux and the said Iberia Building Association to acquire said property and to mature said stock, and that about July 1, 1896, said stock having matured and been accepted in payment for the said property, said association transferred same in full ownership to "your respondent."

He shows: That, up to the date of said transfer of Ursin Nereaux to himself, respondent had paid in installments on the said property the sum of $226.75 or more, and he had paid as interest on the purchase price

thereof the sum of $131. That he had further paid as insurance the sum of $28, and as taxes thereon the sum of $20.

That, since the date of said transfer from Ursin Nereaux to himself, respondent has paid a total, in installments, the sum of $190; in interest, $260; in insurance, $200; and in taxes, $200.

That he has, as above stated, from time to time, made improvements on the said property—has erected thereon a dwelling house, barn, fence, sidewalk, and curbing, and other improvements, amounting in all to the sum of $2,000—all of which payments and improvements were made and paid for by respondent with his own funds.

He specially denies that the said property was in any sense a donation to him, nor was the said sale simulated. And he shows that at the time land in that locality, including said property, had comparatively little value, and that he paid a fair price for the property. He shows that, even should said sale be decreed null and void, or plaintiffs be decreed, for any reason, to have any rights in the said property, that then and in that event petitioner, as an heir of his said father, now deceased, will be entitled to his virile share of the said property.

And reconvening, he further shows that, should said sale from Ursin Nereaux to respondent be decreed null and void, or should plaintiffs be recognized as having rights in the said property, then he is entitled to recover from plaintiffs the value of the improvements, interest, taxes, and insurance and charges as paid by him as above set forth.

In view of the premises, he prayed that the demand of the plaintiffs be rejected, and their suit dismissed; that there be judgment decreeing the sale of said property and stock to defendant to be legal and binding, and that defendant owns the said property claimed by plaintiffs in full ownership, free from any rights, title, claim, or incumbrance in their

favor; and, in the event of their being held to have any rights or claims to said property, then, reconvening, he prays that he have and recover judgment against them in the full sum of $2,000, as the value of improvements erected by him on said land; also $807.75, being the amount of installments and interest paid by him on said stock and to acquire said property; further, the sum of $448, being the insurance and taxes paid thereon by him.

When the case was called for trial, several of the plaintiffs, viz., Alice Nereaux, Mrs. Breaux, and Mrs. Dooley, withdrew from the suit, which was discontinued as to them. On the trial, judgment was rendered rejecting plaintiffs' demand, and decreeing defendant the owner of the property in full ownership. Plaintiffs appealed.

### Opinion.

Under the facts of this case, as disclosed by the evidence, the district court could have rendered no other judgment than that it did.

Ursin Nereaux made no donation whatever to his son Edward. He was an old man—a drayman in the town of New Iberia, without means other than a single dray and horse. Very incautiously, considering his age and the precarious income which he derived from his daily labor, he subscribed for four shares of the stock of the Iberia Building Association, requiring monthly payments which he was unable to meet. Not only this—he borrowed money from the association at a high rate of interest, causing the association to buy for his use and benefit a small tract of land, the title to which was taken by the association in its own name; it agreeing contingently to transfer the same to Nereaux upon the liquidation and settlement between the parties of series E, in which the four shares of stock had been taken. Had Nereaux failed to meet his obligations as a shareholder, his stock would have been forfeited, and with the forfeiture of the stock

would end the contingent right which he had obtained of having the property transferred to him.

It took a very short time to develop the fact that Nereaux was unable to pay for the stock for which he had subscribed. He accordingly sought relief through his son Edward, who was more fortunate than he was himself in respect to his means. He proposed to the son to sell the stock to him, and all his rights as a stockholder; Edward Nereaux agreeing to take his place and assume and discharge all his obligations as such. By an agreement between the father and the son, this sale of the stock, with assignment of rights and assumption of liabilities, was effected.

It was not immediately carried into execution, but, in the interval between the date of the agreement and its carrying out, Edward Nereaux paid the monthly installments upon the stock, and made improvements upon the property. After the substitution of Edward Nereaux for his father, Ursin Nereaux, the former paid all the monthly installments on the stock, up to their maturity, and continued to make permanent and valuable improvements upon the property. It is quite beyond question that the property purchased by the association at the date of its purchase was of no greater value than 'the price which was paid for it. It is also beyond question that the substitution of Edward Nereaux as a shareholder in the building association for his father was the result of a real contract between all the parties, with nothing in it approaching the character of a donation. The property is, of course, much more valuable at present than it was when it was bought from Mrs. Badeaux; but this has resulted from the improvements placed upon it by Edward Nereaux, and the general result in values growing out of a period of prosperity.

We have no reason to suppose that any one or all of the plaintiffs would have been either willing or able to have substituted themselves for their father, as a stockholder, or to have made the monthly payments necessary to have been made to prevent the forfeiture of the stock. They certainly cannot take the benefits of a contract whose onerous obligations they were unwilling to assume, and which they permitted another to assume and to carry out. The situation in this case is not such as would justify the plaintiffs in claiming any of the profits resulting from the contract. Civ. Code, art. 1246. Still less can they claim, as they do, joint ownership in the property purchased by the association.

The judgment appealed from is correct, and it is hereby affirmed.